IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES DONELSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-0094-MJR-SCW |
| | ) |
| DAVID HOLDER, | ) |
| DARREN WHITLEY, | ) |
| DOUG STEPHENS, | ) |
| AIMEE LANG, and | ) |
| GLADYSE C. TAYLOR, | ) |
| | ) |
| Defendants.[1] | ) |

**MEMORANDUM AND ORDER**

**REAGAN, Chief Judge:**

### A. INTRODUCTION

Charles Donelson (Plaintiff), currently incarcerated at Pontiac Correctional Center, filed this complaint under 42 U.S.C. 1983, alleging that various correctional officials (Defendants) used excessive force on him, failed to protect him, and were deliberately indifferent to his medical needs resulting from the use of force (4/23/15 Amended Complaint at Doc. 23).

Currently before this Court are two motions for temporary restraining order (Docs. 44, 51, 52). Plaintiff has also submitted a motion to supplement his briefs in support of his motions with additional exhibits (Doc. 65). The Court **GRANTS** the motion to supplement (Doc. 65) and has

---

[1] Defendants named as "Amy Lane" and "C/O Whitney" indicate that their proper names are Aimee Lang and Darren Whitley. The answer (Doc. 68) indicates that the Defendant named as "Doug Stephen" actually is Doug Stephens. The Court **DIRECTS** the Clerk's Office to amend the docket to reflect the parties' proper names.

considered the additional exhibits that Plaintiff submitted.[2] Defendants responded to both motions for temporary restraining order (Docs. 50 and 59), and Plaintiff filed a reply (Doc. 53). Based on the following, the Court **DENIES** Plaintiffs' motions for temporary restraining order (Docs. 44, 51, 52).

### B. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's original 64-page complaint herein alleged that Sergeant David Holder used excessive force on him. As narrowed by the Court's threshold order of January 29, 2015, the complaint alleged the following. On February 25, 2014, Plaintiff was in his cell preparing for a court date and packing up his legal materials. A guard told Plaintiff that he could not take all of his materials with him. The guard then called in Defendant Holder, who ordered Plaintiff to return half of his property to his cell. Plaintiff was in shackles and carrying his bags back to his cell when Holder stepped on the shackle, tripping Plaintiff (Doc. 1, pg. 5). Plaintiff alleged that Holder then smacked and hit Plaintiff. Plaintiff alleged that other officers were present but did not stop the assault. Plaintiff was unable to identify the additional individuals at the time that he filed his complaint.

Plaintiff later secured leave to amend his complaint to identify the individual who failed to intervene in the assault by Holder. Plaintiff identified that individual as Defendant Whitley (Doc. 23). Plaintiff's amended complaint added a deliberate indifference claim against Aimee Lang, whom Plaintiff alleged visited his cell a few days after the assault and failed to provide him with medical care for his injuries. Plaintiff's amended complaint also added a request for an injunction to prevent Plaintiff from being placed back at Menard Correctional Center plus assault and battery claims against Defendant Holder (*Id.*).

Subsequently, Plaintiff filed the pending motions for temporary restraining order (TRO). Both motions seek an Order preventing Plaintiff's transfer back to Menard Correctional Center.

---

[2] The Clerk's Office is **DIRECTED** to file those exhibits on the docket.

Plaintiff is currently housed at Pontiac Correctional Center in the disciplinary segregation unit. Plaintiff indicates that he is in segregation because of his refusal to transfer back to Menard. He believes that he will be released from segregation as early as July 22, 2015. Plaintiff says he has been told that he will either remain in disciplinary segregation or be transferred to Menard.

Plaintiff believes that once he is transferred back to Menard Correctional Center, where the events in his complaint occurred, that he either will be forced to drop his lawsuit or will be killed. He does not give any basis for this belief. Plaintiff states that Menard will thwart him from pursuing his lawsuit by any means, including death. Plaintiff says that he is labeled a sexual predator and will be housed in an isolated area, where an attack can occur unnoticed. He also indicates that he contemplates suicide due to his fear of returning to Menard. Plaintiff asserts that Defendant Holder previously told him when he left Menard that he would kill him.

Attached to Plaintiff's motion is a cumulative counseling summary with an entry from September 2, 2014 marked. The summary indicates that on that date, Plaintiff had informed the records office that he was to be transferred to Stateville, and the records office responded that he was approved for transfer to Menard and would eventually be transferred there (Doc. 44, p. 5).

Defendants have responded to Plaintiff's motions, arguing that Plaintiff has not shown that he will be harmed if he is transferred. Nor has he shown that he will actually be transferred to Menard, so Defendants argue that the transfer is speculative.

C. APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 65(b)(1) provides that a TRO may issue without notice

> only if: (A) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Here, notice has been provided to Defendants who have answered. Thus, Plaintiff's motion is more properly characterized as one seeking a preliminary injunction. Preliminary injunctions are governed by Rule 65(a) and require notice to the adverse party. A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). *Accord Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right").

To win a preliminary injunction, the moving party must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citing *Winter*, 555 U.S. at 20). The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, 612 F.3d at 546. *Accord Korte v. Sebelius,* 735 F.3d 654, 665 (7th Cir. 2013) (preliminary injunction movant must demonstrate that he (1) has no adequate remedy at law and will suffer irreparable harm if the preliminary injunction is denied, and (2) there is some likelihood of success on the merits of the claim. If the movant makes this showing, the court weighs the competing harms to the parties if the injunction is granted or denied and also considers the public interest. "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success on the merits, the less heavily the balance of harms must tip in the moving party's favor.").

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by

the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. 3626(a)(2).** *See also Westefer*, **682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citations omitted).**

The United States Court of Appeals for the Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* **(citing** *Jordan v. Wolke***, 593 F.2d 772, 774 (7th Cir. 1978)).** *See also W.A. Mack, Inc. v. Gen. Motors Corp.*, **260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").**

D. <u>ANALYSIS</u>

Here, the undersigned finds that Plaintiff has not shown that he is likely to suffer irreparable harm without the injunction. Irreparable harm means that a plaintiff "is unlikely to be made whole by an award of damages or other relief at the end of the trial." *Vogel v. American Soc. of Appraisers*, **744 F.2d 598, 599 (7th Cir. 1984).** Plaintiff seeks a preliminary injunction preventing his transfer to Menard Correctional Center. Plaintiff argues that his transfer is imminent and that he faces a risk of death if transferred.

First, there is no evidence that Plaintiff's transfer is imminent. Plaintiff argues that his parent

institution is Stateville Correctional Center but that he has been told that he will be transferred to Menard Correctional Center (Doc. 51, p. 4). While there is an entry in his cumulative counseling summary indicating that he is approved for transfer to Menard and will eventually be transferred there, the entry was made on September 2, 2014, almost nine months prior to Plaintiff filing his current motions. There is no indication in the record that he has been transferred to Menard Correctional Center. A search of IDOC inmate locator shows Plaintiff housed at Pontiac Correctional Center as of August 12, 2015 (www.illinois.gov/IDOC/OFFENDER, last visited 8/12/15). Nor is there anything in the record, beyond Plaintiff's speculation, that transfer to Menard is imminent. Plaintiff has provided a response to a grievance requesting not to be transferred because he feared harm would come to him if he was transferred. His counselor responded on July 21, 2015 that Plaintiff could seek protective custody from his parent institution (Stateville Correctional Center), but there is no indication when that transfer would occur.

      Furthermore, there is nothing in the record suggesting that Plaintiff's transfer to Menard will cause him irreparable harm. Plaintiff indicates that IDOC is trying to transfer him to Menard to render his current lawsuit moot, but a transfer to Menard would not moot the pending litigation before the Court. Plaintiff also argues that a transfer will put him at risk for injury, including death. Plaintiff believes that staff at Menard will seek to stop his lawsuit by all means necessary, including death, and he claims that Defendant Holder told Plaintiff when he transferred that Holder would kill him. However there is no evidence in the record to support these assertions. Plaintiff includes a grievance seeking to be placed on a medium security unit and a letter to the warden at Pontiac stating that he cannot go to Menard and grieving various individuals at Pontiac for various alleged improper conduct towards Plaintiff. None of these documents supports the claim that Plaintiff will be harmed at Menard.

Plaintiff also points to a grievance in which he requested to *not* be transferred to Menard, expressing his belief that guards and staff, including Holder, are waiting to harm or kill him. But he provides no basis for that belief in the grievance. Plaintiff has failed to present any evidence to indicate that any staff pose a threat to him. And there is no indication that if Plaintiff is transferred to Menard he will be housed anywhere near Defendant Holder, from whom he fears reprisal.

All that Plaintiff has presented to the Court is his generalized fears. There is no evidence to support these fears or to suggest that such fears are likely to come to pass. Accordingly, the Court **FINDS** that Plaintiff is not entitled to the preliminary injunctive relief that he requests.

### E. CONCLUSION

Plaintiff has not satisfied the standard for preliminary injunctive relief. He has not demonstrated that he "would suffer irreparable harm during the pending lawsuit absent this extraordinary remedy." *Baird v. Hodge,* **605 Fed. Appx. 568, 570 (7th Cir. 2015)(unreported),** citing *Girl Scouts of Manitou Council, Inc. v. Girls Scouts of USA, Inc.,* **549 F.3d 1079, 1086 (7th Cir. 2008).** Accordingly, the Court **DENIES** Plaintiff's motions for preliminary injunction (Docs. 44, 51, and 52).

IT IS SO ORDERED.

DATED August 13, 2015.

                                      **s/ Michael J. Reagan**
                                      Michael J. Reagan
                                      Chief Judge
                                      United States District Court